Anthony Coles
Dennis C. O'Donnell
Melissa Godwin
**DLA PIPER LLP (US)**
1251 Avenue of Americas
New York, NY 10020
(212) 335-4500

*Counsel for HTI Financial Solutions Limited*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
:
HTI FINANCIAL SOLUTIONS           :
LIMITED,                          :          24 CIV. [_____]
:
*Plaintiff*,              :
:          **COMPLAINT**
–against -                :
:
MANHATTAN SMI KG PROPERTIES       :
FINANCE LIMITED, SMI USA GROUP LLC :
f/k/a SHANGHAI MUNICIPAL           :
INVESTMENT GROUP USA LLC, SMI 520  :
FIFTH AVE LLC, 520 FIFTH OWNER LLC :
and KG FIFTH AVE INVESTMENT LLC,   :
*Defendants*.        :
---------------------------------------------------------- :
x

HTI Financial Solutions Limited ("HTIFS"), by and through its undersigned counsel, DLA Piper LLP (US), for its Complaint against (i) Manhattan SMI KG Properties Finance Limited ("SMI Issuer"); (ii) SMI USA Group LLC, f/k/a Shanghai Municipal Investment (Group) USA LLC ("SMI USA"); (iii) SMI 520 Fifth Ave LLC ("SMI Fifth Ave"); (iv) 520 Fifth Owner LLC ("520 Fifth Owner," and together with SMI Issuer, SMI USA, and SMI Fifth Ave, the "SMI Defendants"); and (v) KG Fifth Ave Investment LLC ("KG Fifth," and together with the SMI Defendants, the "Defendants") alleges, upon information and belief, as follows:

**NATURE OF THE ACTION**

1.      In 2017, HTIFS, a Hong Kong based investment manager, invested the principal amount of $245 million with the Defendants for the purpose of financing the Defendants' development of a planned 76 story mixed use supertall tower at 520 Fifth Avenue (the "<u>520 Project</u>") in prime midtown Manhattan, on a block located on the northeast corner of 43rd Street and Fifth Avenue (the "<u>Land</u>").

2.      The investment was effectuated through the purchase by HTIFS of $245 million of Senior Secured Bonds from the SMI Issuer. HTIFS' substantial investment was secured by, among other things (i) pledges of the SMI Defendants' interest in the 520 Project – specifically, 50.8% of the equity in the project's owner, 520 Fifth Owner LLC (the "<u>Project Owner</u>"); as well as (ii) a corporate guaranty, pursuant to which certain Defendants guaranteed "full and prompt payment and performance" of HTIFS' investment, as explained more fully herein.

3.      The security documents, including the corporate guaranty, prohibited the transfer of HTIFS' security to a third party, which would strip away HTIFS' repayment security. Nevertheless, in order to raise additional financing for the 520 Project, in 2019 the Defendants – without the knowledge or consent of HTIFS – re-traded HTIFS' collateral to a third-party and failed to repay HTIFS the amount of its investment or any of the proceeds that Defendants received from unlawfully re-trading HTIFS's collateral, thereby leaving HTIFS defrauded of the total amount of its investment. During the same period, Defendants also issued misleading reports to HTIFS regarding its activities in connection with the 520 Project, which failed to disclose that HTIFS's security has been stripped away and re-traded to a third party in breach of Defendants' agreements with HTIFS.

4.      When HTIFS discovered the fraudulent transfer of its security in 2020, the SMI Defendants defaulted under the terms of the pledge documents and guaranty, and demanded

payment of all amounts outstanding, which amounted to more than $300 million.  At that time, HTIFS stated that it would enforce all its legal rights to collect the amount outstanding.  In order to save the development from bankruptcy, however, HTIFS agreed to negotiate with Defendants to allow them to re-collateralize the 520 Project and ultimately repay HTIFS.

5. After extensive negotiations to save the Project, HTIFS agreed to forbear from pursuing its legal remedies against the SMI Defendants until December 15, 2023 (the "Deferred Maturity Date") in exchange for an agreement by the SMI Defendants to (i) pay all its indebtedness, (ii) pledge to HTIFS all of the SMI Defendants' remaining interests in the development at 520 Fifth Avenue, and (iii) make an additional pledge of an equity interest held by the SMI Defendants in a separate property, Central Park Tower, a supertall skyscraper on West 57th Street in Manhattan that is marketed as the tallest residential building in the world and the tallest building outside of Asia by roof height.

6. On or about December 15, 2023, Defendants again defaulted on their obligation to repay all amounts due and owing to HTIFS by the Deferred Maturity Date.  Accordingly, HTIFS brings this action to recover the more than $300 million it is presently owed by Defendants and to enjoin the Defendants from transferring any of their interests promised to HTIFS as security for the debts Defendants owe HTIFS.

## PARTIES AND CITIZENSHIP

7. Plaintiff HTIFS is an investment fund manager incorporated and headquartered in Hong Kong.  It is a wholly owned subsidiary of Haitong International Securities Group Limited, which is also headquartered in Hong Kong.

8. Defendant SMI USA is a limited liability company incorporated under the laws of Delaware, with its principal office located at 230 Park Avenue, New York, New York, 10169.  SMI USA is not currently qualified to do business and in good standing in New York.

9. Defendant SMI Fifth Ave is a limited liability company incorporated under the laws of Delaware, with its principal office also located at 230 Park Avenue, New York, New York, 10169. SMI Fifth Ave is not currently qualified to do business and in good standing in New York.

10. Defendant SMI Issuer is a company incorporated under the laws of the British Virgin Islands, with its principal office located at 1330 Avenue of the Americas, New York, New York 10019. SMI USA is not currently qualified to do business and in good standing in New York.

11. Defendant 520 Fifth Owner is a limited liability company incorporated under the laws of Delaware, with its principal office located at 28 Liberty Street, New York, New York 10005.

12. Defendant KG Fifth is a limited liability company incorporated under the laws of Delaware.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, HFIFS is a foreign citizen (based in Hong Kong), and Defendants are all incorporated or domiciled in Delaware or New York.

14. Venue is proper under 28 U.S.C. § 1391(a).

## FACTS GIVING RISE TO CLAIMS

15. Under a bond purchase agreement between HTIFS and Manhattan SMI KG Properties Finance Limited (as previously defined, the "SMI Issuer") dated June 22, 2017 (the "Bond Purchase Agreement"), HTIFS agreed to purchase from the SMI Issuer certain Senior Secured Bonds (the "Bonds") in the principal amount of $245,000,000 (the "Bond Proceeds"). The

Bonds were issued for the purpose of financing the Project Owner's development of the 520 Project – a planned mixed use supertall tower on a prime block in midtown Manhattan, located at 520 Fifth Avenue, on the northeast corner of 43rd Street and Fifth Avenue.

16. As a condition of the Bond Purchase Agreement, to secure the Issuer's obligations to HTIFS, certain affiliates of the Issuer and third parties executed various pledge agreements, security agreements, and guaranties. These included: (i) a Pledge and Security Agreement, dated June 22, 2017 (the "Pledge Agreement"), executed by SMI Fifth Ave and KG Fifth (collectively, the "Pledgors"); and (ii) a Guaranty, also dated June 22, 2017 (the "Guaranty") executed by SMI USA, 520 Fifth Owner and KG Fifth (collectively, the "Guarantors").

17. Under the Pledge Agreement, HTIFS was granted a security interest in 50.8% of the equity of the Project Owner – the entity holding the Land on which the 520 Project was to be built. **Ex. A** (Pledge Agreement § 1.2, Schedule 1.)

18. Under the Guaranty, the Guarantors irrevocably and unconditionally (and jointly and severally) guaranteed the Issuer's "full and prompt payment and performance when due (whether at stated maturity, upon acceleration or otherwise)" of the '***Guaranteed Obligations***,'" including, "without limitation, (i) the principal of and interest on the Bonds, (ii) all other payment obligations of the Issuer under the Bonds Purchase Agreement and the other Financing Documents, and (iii) the punctual and faithful performance, keeping, observance and fulfilment by the Issuer of all of the agreements, conditions, covenants, and obligations of the Issuer contained in the Financing Documents." **Ex. B** (Guaranty § 2.)

19. Under Clause 7(c) of the Guaranty, the Project Owner and the other Guarantors were prohibited from "[t]ransferr[ing] … any of [their] assets," to any entity not specifically permitted by the Guaranty or Bond Purchase Agreement, or as otherwise approved by a majority of the Bond holders. **Ex. B** (Guaranty, § 7(c)).

20. Such prohibition notwithstanding, on or about July 1, 2019, the Land, unbeknownst to HTIFS, was transferred by the Project Owner to a new entity, 520 Fee Owner 2 LLC (the "New 520 Owner"), at a valuation of $205,000,000 (the "Transfer"). **Ex. C** (520 Fifth Avenue Title Record). The New 520 Owner was subject to neither the equity pledge reflected in the Pledge Agreement nor the prohibition on future transfers reflected in Clause 7(c) of the Guaranty, and it did not provide any guarantee to HTIFS.

21. The net effect of the Transfer of all of the original Project assets to the New 520 Owner was to move virtually all the assets available to satisfy the SMI Defendants' existing indebtedness to a non-SMI Defendant entity, whose assets would not be available to satisfy the claims of any of the SMI Defendants' then-existing creditors, including HTIFS. Upon information and belief, the Transfer was effectuated to make collateral available to secure a new investment by a new investor (the "New Investor"), which acquired an equity stake in, provided a "default loan" to, and facilitated the refinancing of an existing construction loan for benefit of the 520 Project, at or about the time the Transfer was made.

22. The SMI Defendants did not advise HTIFS – let alone seek HTIFS' permission in connection with – the Transfer. Instead, the SMI Defendants merely advised HTIFS in or around March 2020 that the New Investment in the Project had occurred, without disclosing any of the critical terms of that Investment, or the impact on HTIFS' interests and security. Because the high level account provided to HTIFS about the New Investment in the 520 Project omitted the key details, and made no reference to the Transfer of assets away from the Project Owner, HTIFS had no immediate concern about its security package.

23. Indeed, HTIFS did not become aware of the Transfer of the Land from the Project Owner to the New 520 Owner until April 2020. After learning about the Transfer and the risk to its security in its investment in the Project, HTIFS made diligent efforts to remedy the

diversion of value thereby effectuated, either by facilitating the return of the Land (or the value thereof) to HTIFS or restructuring the transaction in such a way as to make the value of the Land once again available to HTIFS as security.

24. During this period, HTIFS sent the SMI Defendants a default notice, demanding a repayment schedule and information about the status of the 520 Project, and reserving all of its rights as to other remedies. In lieu of proceeding immediately to an exercise of its enforcement rights, however, HTIFS undertook to negotiate in good faith with the SMI Defendants and the New Investor a restructuring of the 520 Project. Such efforts notwithstanding, the SMI Defendants went into default, for the first time, when they failed to repay the outstanding principal in the amount of $245 million and then-accrued interest in the amount of $52,844,353 due under the Bonds on or before June 22, 2020, the Bond Purchase Agreement maturity date (the "Initial Maturity Date").

25. Such failure constituted an Event of Default as defined under the Bond Purchase Agreement and such Event of Default continued without cure. The 520 Project, too, had stalled, with no construction having been commenced on the Land prior to the Initial Maturity Date. The Project Owner was thus also in material breach of the construction timeline schedule set forth in Schedule 6 of the Bond Purchase Agreement. **Ex. D** (Bond Purchase Agreement, Schedule 6). Confronted with these additional defaults, HTIFS once again engaged with the Defendants about a restructuring of the 520 Project.

26. As a result of these efforts, in August 2020, HTIFS executed a restructuring term sheet (the "August 2020 Term Sheet") that would have granted HTIFS control and economic interests in the 520 Project comparable to those it had prior to the Transfer. Notwithstanding repeated representations by the SMI Defendants that the transaction proposed in the August 2020

Term Sheet would be implemented, and the Land or the value thereof restored for HTIFS' benefit, the parties' discussions stalled repeatedly over the remainder of 2020.

27. HTIFS threatened to sue, seeking avoidance of the Transfer in New York state or bankruptcy court as a fraudulent conveyance and asserting an array of claims against, among others, the Defendants. In order to avoid prosecution of these claims, HTIFS and the SMI Defendants finally reached closure in or about December 2020, entering into a forbearance agreement (the "Forbearance Agreement") and amended documentation (including an Amended and Restated Bond Purchase Agreement (the "Amended and Restated Bond Purchase Agreement"), an amended Guarantee (the "Amended and Restated Guarantee") and an Amended and Restated Pledge and Security Agreement (the "Amended and Restated Pledge and Security Agreement"), as well as a Transfer and Exchange Agreement (the "Transfer Agreement") as to the 520 Project (the "520 Restructuring Settlement"). **Ex. E** (Amended and Restated Guarantee), **Ex. F** (Amended and Restated Bond Purchase Agreement), **Ex. G** (Forbearance Agreement), **Ex. H** (Transfer Agreement), **Ex. K** (Amended and Restated Pledge and Security Agreement).

28. Under the terms of the 520 Restructuring Settlement, HTIFS agreed to forbear as to the exercise of remedies, release claims against a number of parties with roles as to the 520 Project and/or otherwise ratify certain actions undertaken by such parties as to the 520 Project in exchange for the transfer by SMI of its remaining interests in the New 520 Owner, along with a 7.5% indirect stake in Central Park Tower, to HTIFS. While the 520 Restructuring did not result in a full release of HTIFS' claims against the SMI Defendants, it did provide the SMI Defendants with significant breathing room, by virtue of HTIFS' agreeing to forbear as to any further enforcement effort for a period of three years, or up to and including December 15, 2023.

29. The Defendants never approached HTIFS about a further extension, or other accommodation or amended restructuring terms, and the Deferred Maturity Date (December 15,

8

2023), has now come and gone without any payment from the Defendants. On December 20, 2023, HTIFS sent the Defendants a Payment Amount Notification Letter, dated December 19, 2023 (the "Notification Letter"). **Ex. I** (Notification Letter). The Notification Letter noted the new maturity date and the amount now owed by SMI – $344,100,503.77 – and also stated that, "upon the occurrence of the Termination Event, the agreement of the Haitong Parties under the Forbearance Agreement to forbear from exercising their respective default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which the [Owner] and the other Obligors waives." *Id.* As a result, according to the Notification Letter "[a]ny or all of the Haitong Parties may at any time thereafter proceed to exercise any and all of their respective rights and remedies under any or all of the Existing Bonds Purchase Agreement, any other Financing Document and/or applicable law, including, without limitation, their respective rights and remedies thereunder with respect to the Specified Defaults." *Id.*

**Additional Breaches by Defendants**

30. Since consummation of the 520 Restructuring Settlement, HTIFS has learned that the SMI Defendants' failure to pay the Payment Amount on or before the Deferred Maturity Date was not the only way in which the Defendants have breached the Settlements' representations, warranties and covenants.

31. The Defendants, for example, represented in the Transfer Agreement that the Organizational Chart set forth in Schedule 2 to the Transfer Agreement was true, correct and not misleading. **Ex. H** (Transfer Agreement § 4.2(f)). However, when HTIFS conducted a property title search for Central Park Tower in 2023, the results showed that the Organizational Chart in Schedule 2 did not reflect fully the actual ownership of Central Park Tower at the time of execution of the Transfer Agreement. In fact, when HTIFS queried SMI about the discrepancies

between the documentation it provided and the information gathered in the title search, the SMI Defendants sent HTIFS an Organizational Chart that showed a significantly different structure. SMI's provision of materially inaccurate and misleading information, upon which HTIFS relied in entering into the 520 Restructuring Settlement, constitutes a breach of the representation set forth in Clause 4.2(f) of the Transfer Agreement. **Ex. H** (Transfer Agreement, § 4.2(f).)

32. The SMI Defendants also represented in the Transfer Agreement that the Central Park Tower Company (*i.e.*, SMI Central Park Tower LLC) and the Subsidiary (*i.e.* Smitell Development Group LLC) had good and marketable title to all its respective properties and assets, in each case subject to no lien. **Ex. H** (Transfer Agreement § 4.2(i)). This representation was critical to HTIFS' agreement to take a 7.5% indirect interest in the Central Park Tower Company as part of the Restructuring Settlement. However, the Delaware UCC filings as to the Company indicate that the Company's equity interest in the Subsidiary are subject to two (2) liens—one encumbering 50% of SMI's interest in the Subsidiary in favor of Ping An (of China Securities (Hong Kong) Company Limited) and the other encumbering 3.3% of SMI's interest in the Subsidiary in favor of Genesis Central Park Power LLC. This also constitutes a breach of the representation set forth in Clause 4.2(i) of the Transfer Agreement.

33. Schedule 3 of the Transfer and Exchange Agreement indicates that SMI Central Park Tower LLC (as debtor) had three (3) outstanding secured obligations – a $900 million loan from JP Morgan Chase Bank, a $300 million mezzanine loan, and a $300 million EB5 loan. In fact, the borrower as to the $900 million JP Morgan loan was Smitell Retail LLC, not the Company; the borrower as to the $300 million mezzanine loan was the Subsidiary; and the borrower as to the $300 million EB5 loan was another entity, SDG Associate LLC. In addition, the Management Financial Statements dated as of December 31, 2022, which were provided to HTIFS in March 2023, shows another $300 million loan at SMI Central Park Tower level, which,

upon information and belief, is due to Ping An. All the foregoing constitutes a breach of the representations set forth in Clause 4.2(g) of the Transfer Agreement.

34.   A review of claims filed against the Defendants (and related entities) in New York courts reflect a long list of similar issues raised in connection with Defendants' other real estate development projects in New York City. Indeed, Defendants are currently facing numerous claims in New York courts in which parties have alleged claims of breach of contract, fraud, conversion, breach of fiduciary duty, and conspiracy, among other claims, arising out of allegations of unpaid and defaulted loans in connection with other Manhattan real estate projects, including The Centrale at 138 East 50th Street, the Lipstick Building at 885 Third Avenue, and 91 Leonard Street. For example:

- *Dragons 516 Ltd. v. GDC 138 E 50 LLC*, Index No. 651690/2019 (lender brought claim against project entity and SMI USA, in its capacity as guarantor, for repayment of defaulted $30 million loan, alleging that SMI had fraudulently induced plaintiff to extend the loan. The parties continue to litigate as of the date of this filing, with plaintiff seeking – and SMI attempting to prevent – discovery into the location of the $30 million.)

- *China Minsheng Banking Corp. Ltd., v. Shanghai Municipal Investment (Group) USA, LLC, et al.*, Index No. 651704/2019 (Sup. Ct. N.Y., Mar. 22, 2019) (lender suing SMI USA, GDC, and related companies for $26 million loan repayment; trial pending.)

- *Jingyue Wei v. SMI USA Group LLC*, Index No. 160659/2021 (N.Y. Sup Ct.) (court granting default judgment to plaintiff for $8.6 million in action brought to recover damages plaintiff alleged arose from SMI's fraudulent scheme to steal real estate investment funds).

- *Yunjie Frank Yang v. Knights Genesis Group et al*, Index No. 651118/2021 (Sup. Ct. N.Y., Feb. 17, 2021) (investor suing Knights Genesis, Yuan, Chen's wife, and others alleging breaches of fiduciary duties and contracts related to real estate development investment; plaintiff's motion for summary judgment is pending.)

- *Dragons 516 Ltd. v. Knights Genesis Investment Limited et al.*, Index No. 653187/2021 (Sup. Ct. N.Y., May 14, 2021) (lender suing SMI and its affiliates and executives, among others, alleging fraud and conspiracy regarding $30 million loan; defendants are appealing the denial of their motion to dismiss.).

- ***Dragons 516 Limited vs. Knights Genesis Investment Limited et al***, Index No. 01033/2023 (N.Y. App. Div. Feb 24, 2023) (plaintiff brought claim to recover $30 million investment in real estate development project in Tribeca, alleging that defendants, which included SMI affiliates, had engaged in a fraudulent investment scheme).

35. As set forth above, similar real estate shell games have also played out in this case, both before and after the Transfer. Thus, for example, HTIFS had originally entered into the Bond Purchase Agreement in reliance, in part, on a "comfort letter" issued by Shanghai SMI Assets Management (Group) Company Limited ("SMI Assets"), in which SMI Assets indicated that, amongst others, SMI USA is taking an active role in the 520 Project which SMI Assets will pay great attention to and give its full support, and that SMI Assets does not have the intention to reduce its equity interest in SMI USA below 51% in the next three years (*i.e.*, until 14 June 2020). SMI Assets was owned indirectly by the Shanghai Municipal Government, and HTIFS reasonably took comfort in the involvement of SMI Assets – with its billions of dollars of revenue - in the 520 Project. However, HTIFS learned in April 2020 that Chengtou USA Inc., the SMI Assets subsidiary that held one hundred percent of the equity in SMI USA, had been dissolved on March 13, 2020, and the chain of equity by which SMI Assets held its equity interest in SMI USA severed entirely, without explanation or offer of remedy.

36. Finally, the validity, effect and value of the additional equity in its indirect interest in Central Park Tower that SMI granted to HTIFS in connection with the 520 Restructuring Settlement remain suspect. Public records show that SMI has pledged portions of its equity in Central Park Tower, not just to HTIFS, but to two other creditors. **Ex. J** (Central Park Tower Title Records). Beyond these pledges, there is no way of knowing whether, consistent with past practices, SMI has pledged its equity in Central Park Tower to still other investors to which it is indebted, without recording such pledges in the public record.

## CLAIMS

### COUNT I - BREACH OF CONTRACT
(<u>Against SMI Defendants, as to Amended Bond Issuance Agreement</u>)

37. The allegations in paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38. Pursuant to the December 2020 Amended and Restated Bond Purchase Agreement, the SMI Defendants agreed that the Repayment Amount would be due and payable on the Deferred Maturity Date. HTIFS has fully performed its obligations under the Amended and Restated Bond Purchase Agreement.

39. On December 20, 2023, HTIFS sent the SMI Defendants a Repayment Amount Notification Letter, noting that the Maturity Date was December 15, 2023, and that the Repayment Amount due and payable as of that date was $344,100,503.77.

40. The Defendants did not respond to the Repayment Amount Notification Letter and, as of the date hereof, have not paid the Repayment Amount to HTIFS.

41. The SMI Defendants are liable to HTIFS for actual damages in an amount to be proven at trial, but not less than $344,100,503.77, plus any consequential damages suffered by HTIFS as a result of such breaches.

### COUNT II - BREACH OF CONTRACT
(<u>Against SMI Issuer, as to Bond Purchase Agreement</u>)

42. The allegations in paragraphs 1 through 41 of this Complaint are incorporated herein by reference.

43. Pursuant to the June 22, 2017 Bond Purchase Agreement, HTIFS agreed to purchase from the Issuer the Bonds in the principal amount of $245 million, under terms and conditions that required the repayment of the Bonds, together with all accrued interest, on or before the Initial Maturity Date. HTIFS has fully performed its obligations thereunder.

44. The Issuer went into default for the first time on June 22, 2020, when it failed to repay the outstanding principal in the amount of $245 million and interest in the amount of $52,844,353 which was due under the Bonds on or before the Initial Maturity Date.

45. Such failure constituted an Event of Default as defined under the Bond Purchase Agreement and such Event of Default has continued without remedy.

46. Pursuant to the December 2020 Amended and Restated Bond Purchase Agreement, the SMI Defendants agreed that the Repayment Amount would be due and payable on the Deferred Maturity Date.  HTIFS has fully performed its obligations under the Amended and Restated Bond Purchase Agreement.

47. On December 20, 2023, HTIFS sent the SMI Defendants a Repayment Amount Notification Letter, noting that the Maturity Date was December 15, 2023, and that the Repayment Amount due and payable as of that date was $344,100,503.77.

48. The Defendants did not respond to the Repayment Amount Notification Letter and, as of the date hereof, have not paid the Repayment Amount to HTIFS.

49. The Issuer is liable to HTIFS for actual damages in an amount to be proven at trial, but not less than $344,100,503.77, plus any consequential damages suffered by HTIFS, as a result of its breach of the Amended and Restated Bond Purchase Agreement.

### COUNT III - BREACH OF CONTRACT
(**Against Guarantors SMI USA, 520 Fifth Owner and KG Fifth, as to Guaranty**)

50. The allegations in paragraphs 1 through 49 of this Complaint are incorporated herein by reference.

51. On June 22, 2017, the Guarantors executed the Guaranty in connection with the June 2017 Bond Purchase Agreement, to secure the Issuer's obligations to HTIFS.

52. Pursuant to section 2 of the Guaranty, the Guarantors irrevocably and unconditionally guaranteed the Issuer's "full and prompt payment and performance when due (whether at stated maturity, upon acceleration or otherwise)" of the 'Guaranteed Obligations," which include, "without limitation, (i) the principal of and interest on the Bonds, (ii) all other payment obligations of the Issuer under the Bonds Purchase Agreement and the other Financing Documents, and (iii) the punctual and faithful performance, keeping, observance and fulfilment by the Issuer of all or the agreements, conditions, covenants, and obligations of the Issuer contained in the Financing Documents."

53. The Issuer went into default when it failed to repay the outstanding principal in the amount of $245,000,000 and interest in the amount of $52,844,353 due under the Bonds on or before the Initial Maturity Date of June 22, 2020.  HTIFS has fully performed its obligations thereunder.

54. Such failure constituted an Event of Default as defined under the Bond Purchase Agreement and such Event of Default continues uncured, triggering the Guarantors' obligations under the Guaranty.

55. On December 16, 2020, the Guarantors entered into the Amended and Restated Guarantee, reiterating the Guarantors' irrevocable and unconditional guarantee of the Issuer's "full and prompt payment and performance when due (whether at stated maturity, upon acceleration or otherwise)" of the 'Guaranteed Obligations."

56. Pursuant to the December 2020 Amended and Restated Bond Purchase Agreement, the SMI Defendants agreed that the Repayment Amount would be due and payable on the Deferred Maturity Date.  HTIFS has fully performed its obligations under the Amended and Restated Bond Purchase Agreement.

57. On December 20, 2023, HTIFS sent the SMI Defendants a Repayment Amount Notification Letter, noting that the Maturity Date was December 15, 2023, and that the Repayment Amount due and payable as of that date was $344,100,503.77.

58. The Defendants did not respond to the Repayment Amount Notification Letter and, as of the date hereof, have not paid the Repayment Amount to HTIFS.

59. The Guarantors are each jointly and severally liable to HTIFS for actual damages in an amount to be proven at trial, but not less than $344,100,503.77, plus any consequential damages suffered by HTIFS as a result of such breaches.

### COUNT IV - BREACH OF CONTRACT
(<u>Against SMI Issuer, SMI USA and SMI Fifth Ave, as to Amended and Restated Pledge and Security Agreement and Guaranty</u>)

60. The allegations in paragraphs 1 through 59 of this Complaint are incorporated herein by reference.

61. On June 22, 2017, SMI Fifth Ave and KG Fifth executed the Pledge Agreement and Guaranty Agreement in connection with the June 2017 Bond Purchase Agreement, to secure the Issuer's obligations to HTIFS.

62. Pursuant to Section 1.2 of the Pledge Agreement, HTIFS was granted a security interest in 50.8% of the equity of the Project Owner, the owner of the Land and the 520 Project.

63. Under Clause 7(c) of the Guaranty, the Project Owner was prohibited from "[t]ransferr[ing] … any of its assets, other than (i) to the Project Owner or any Subsidiary, the Pledgors, the Issuer or its Subsidiaries… unless approved by the Required Holders."

64. Such prohibition notwithstanding, and unbeknownst to HTIFS, on or about July 1, 2019, Defendants transferred the Land to a new entity, New 520 Owner, which entity was subject to neither the equity pledge reflected in the Pledge Agreement nor the prohibition on future

transfers reflected in Clause 7(c) of the Guaranty Agreement. The New 520 Owner also did not provide any guarantee.

65. The effect of the Transfer was to move virtually all the assets available to satisfy the SMI Defendants' existing indebtedness to a non-SMI Defendant entity whose assets would not be available to satisfy the claims of HTIFS.

66. On December 16, 2020, SMI Issuer, SMI USA and SMI Fifth Ave, among others, executed an Amended and Restated Pledge and Security Agreement, granting HTIFS with a continuing lien and security interest in certain pledged interests "[a]s collateral security for the prompt and complete payment and performance when due of the Bonds Obligations and the Guaranteed Obligations, and the performance of the covenants contained in the Bonds Purchase Agreement, the Guarantee, and/or any other Financing Document (as defined in the Bonds Purchase Agreement) when due," to "induce" HTIFS to "enter into the Forbearance Agreement and amend and restate the Bonds Purchase Agreement…"

67. Pursuant to the December 2020 Amended and Restated Bond Purchase Agreement, the SMI Defendants agreed that the Repayment Amount would be due and payable on the Deferred Maturity Date. HTIFS has fully performed its obligations under the Amended and Restated Bond Purchase Agreement.

68. On December 20, 2023, HTIFS sent the SMI Defendants a Repayment Amount Notification Letter, noting that the Maturity Date was December 15, 2023, and that the Repayment Amount due and payable as of that date was $344,100,503.77.

69. The Defendants did not respond to the Repayment Amount Notification Letter and, as of the date hereof, have not paid the Repayment Amount to HTIFS.

70. The Guarantors are each jointly and severally liable to HTIFS for actual damages in an amount to be proven at trial, but not less than $344,100,503.77, plus any consequential damages suffered by HTIFS as a result of such breaches.

71. SMI Issuer, SMI USA, SMI Fifth Ave and KG Fifth, as Pledgors and Guarantors, are liable to HTIFS for actual damages in an amount to be proven at trial, but not less than $344,100,503.77, plus any consequential damages suffered by HTIFS as a result of such breaches of the Pledge Agreement and the Guaranty, as each amended.

WHEREFORE, as a result of Defendants' contractual breaches, HTIFS respectfully requests entry of judgment in favor of HTIFS and against Defendants as follows:

(a) Awarding HTIFS judgment against the Defendants, jointly and severally, in an amount not less than $344,100,503.77;

(b) Awarding HTIFS consequential damages as a result of Defendants' various breaches, in an amount to be determined at trial;

(c) Awarding such provisional relief as may be requested by HTIFS, as the Court considers appropriate;

(d) Granting HTIFS such other and further relief, including but not limited to attorneys' fees, and punitive and exemplary damages, as the Court considers appropriate.

| | |
|---|---|
| Dated:  January 11, 2024<br>New York, New York | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Anthony P. Coles*<br>Anthony P. Coles<br>Dennis C. O'Donnell<br>Melissa J. Godwin<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br><br>*Counsel to HTI Financial Solutions Limited* |