```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
HTI FINANCIAL SOLUTIONS LIMITED,         :
                         Plaintiff,      :
                                         :       24cv237 (DLC)
             -v-                         :
                                         :       OPINION AND
MANHATTAN SMI KG PROPERTIES FINANCE      :         ORDER
LIMITED, et al.,                         :
                         Defendants.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Anthony Paul Coles
DLA Piper US LLP
1251 Avenue of the Americas, 27th Floor
New York, NY 10020

For defendants SMI USA Group LLC and SMI 520 Fifth Ave LLC:
Jeffrey R. Miller
David Lewittes
Doron A. Leiby
Miller, Leiby & Associates, P.C.
32 Broadway
New York, NY 10004

DENISE COTE, District Judge:

This Opinion grants judgment to plaintiff HTI Financial Solutions Limited ("HTI") following a bench trial. HTI invested in the development of a supertall tower in midtown Manhattan (the "Project") in 2017 by purchasing bonds in the amount of $245 million. The debt was restructured in 2020. The borrower defaulted in 2023 and this litigation followed. HTI has sued the issuer of the bonds and four guarantors. Two of the

guarantors have answered and proceeded to trial. The remaining defendants defaulted and were dismissed from this action in an Order issued today. For the following reasons, judgment is awarded to HTI against defendants SMI USA Group LLC and SMI 520 Fifth Ave LLC pursuant to agreements executed in 2020.

## Findings of Fact

The findings of fact are largely contained in this section of the Opinion but appear as well in the final section. The facts recited here are drawn from the documents executed and exchanged between the parties and are undisputed.

I.   The 2017 Agreements

HTI is an investment fund manager incorporated in Hong Kong. In 2017, HTI invested in the Project through a series of agreements (the "2017 Agreements"). On June 22, HTI agreed to purchase senior secured bonds (the "Bonds") in the principal amount of $245 million from dismissed-defendant Manhattan SMI KG Properties Finance Limited ("SMI Issuer") (the "2017 Bond Purchase Agreement"). The Agreement set the Bonds' maturity date as June 22, 2020 (the "Initial Maturity Date").

Concurrently with the 2017 Bond Purchase Agreement, HTI executed a Pledge and Security Agreement (the "2017 Pledge") with defendant SMI 520 Fifth Ave LLC ("SMI 520") and dismissed-defendant KG Fifth Ave Investment LLC ("KG Fifth"). Through the

2017 Pledge, HTI was granted a security interest in a percentage of the equity of dismissed-defendant 520 Fifth Owner LLC ("520 Fifth Owner"), the owner of the land on which the Project was to be built (the "Land").  HTI also executed a Guaranty (the "2017 Guaranty") with defendant SMI USA Group LLC ("SMI USA"), 520 Fifth Owner, and KG Fifth (together, the "2017 Guarantors"). The 2017 Guarantors jointly and severally guaranteed SMI Issuer's "full and prompt payment and performance when due (whether at stated maturity, upon acceleration or otherwise)" of the payment of principal and interest on the Bonds.  The 2017 Guaranty also prohibited 520 Fifth Owner and the other 2017 Guarantors from transferring any of their assets to any entity not specifically permitted by the Guaranty or Bond Purchase Agreement.

II.  Default on the 2017 Agreements

In July of 2019, 520 Fifth Owner transferred the Land to a new entity, non-party 520 Fee Owner 2 LLC ("Fee Owner 2").  Fee Owner 2 was not subject to the equity pledge reflected in the 2017 Pledge nor the prohibition on future transfers reflected in the 2017 Guaranty.

Upon learning of the transfer, HTI sent a default notice and attempted to negotiate a restructuring of the Project.  As of that time, the Project had stalled; no construction had

commenced; and the parties negotiated a restructuring to avoid litigation.

   III. The 2020 Restructuring

   In December of 2020, HTI, SMI Issuer, SMI USA, and SMI 520 entered into a series of agreements to restructure the Project (the "2020 Agreements").  Each of these agreements adopts New York law as the governing law.  In essence, HTI agreed to postpone the maturity date of the Bonds for three years in exchange for additional pledges by the defendants.  520 Fifth Owner and KG Fifth were not parties to the 2020 Agreements.

         A. The 2020 Amended and Restated Bond Purchase
            Agreement

   On December 16, HTI and SMI Issuer entered into an Amended and Restated Bond Purchase Agreement (the "2020 Bond Purchase Agreement").  SMI Issuer agreed to authorize the re-issue of the Bonds in the principal amount of $245 million and a maturity date three years hence (the "Maturity Date").  Section 8.1 of the Agreement provides:

> (a) (i) The principal sum of US$245,000,000.00 and
> (ii) an amount equal to an internal rate of return on
> the Bonds set forth in Section 8.1(b), for any period
> after the first twelve (12) months from the date
> hereof (the "Repayment Amount") shall be <u>due and
> payable</u> on the date that is <u>thirty-six (36) months
> from the date of this Agreement, as may be extended
> for a period of twelve (12) months</u> subject to annual
> review by the Required Holders (the "Maturity Date").
> The <u>Repayment Amount</u> payable by the Company <u>shall be
> as notified by the Purchaser to the Company five (5)</u>

4

> <u>Business Days prior to the Maturity Date</u> in the form of notification letter attached in Schedule C (Repayment Amount Notification Letter).
>
> (b) The internal rate of return on the Bonds set forth in Section 8.1(a)(ii) for any period after the first twelve (12) months from the date hereof shall be (i) a maximum of 12.0% per annum after tax (based on a 365-day period) if no proceeds have been generated from any sale, transfer or assignment of the 520 Property during such period or (ii) a maximum of 6.0% per annum after tax (based on a 365-day period) if proceeds have been generated from any sale, transfer or assignment of the 520 Property during such period.

(Emphasis supplied.)

As defined in the Agreement, the "Purchaser" refers to HTI. The "Company" refers to SMI Issuer. The "Required Holders" refers to "the holders of a majority in principal amount of the Bonds at the time outstanding (exclusive of Bonds then owned by the Company, any Subsidiary of the Company, or any of their respective Affiliates)."

The Agreement also sets forth the events and conditions constituting a default. Section 11.1 lists, among other events, that an Event of Default shall exist if "an Obligor defaults in the payment of any amount (including the Repayment Amount under any Bonds when the same becomes due and payable." The "Obligor" refers to SMI Issuer or any Pledgor or Guarantor under the 2020 Agreements.

5

Section 11.4, labeled "No Waivers or Election of Remedies, Expenses, Etc.," warned that a delay by HTI did not waive its rights. It provides:

> No course of dealing and no delay on the part of the holders, the Administrative Agent and the Collateral Agent, on behalf of the Secured Parties in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice their rights, powers, or remedies.

(Emphasis supplied.) The Agreement's definitions of the terms "Administrative Agent" and "Collateral Agent" refer to HTI. The "holders" refers those in whose name the Bonds are registered. The "Secured Parties" refers to the holders of the Bonds or HTI.

The 2020 Bond Purchase Agreement also defines the conditions under which it can be amended. Section 15.1 specifies that the agreement may only be amended with the written consent of SMI Issuer, HTI, and the Required Holders, and that "no amendment or waiver may, without the written consent of the Purchaser and the holder of each Bond at the time outstanding, . . . amend any of Sections 8 (Payment of the Bonds)" or "Section 11.1(a) or Section 11.1(b) (Events of Default)," among other sections.

### B. The Amended and Restated Guarantee and Pledge Agreement

Also on December 16, HTI executed an Amended and Restated Guarantee (the "2020 Guarantee") with SMI USA and SMI 520 (the

6

"Guarantors").  Under the 2020 Guarantee, Guarantors SMI USA and SMI 520 each

> irrevocably and unconditionally guarantees to the Secured Parties, jointly with the other Guarantors and severally, the full and prompt payment and performance when due (whether at stated maturity, upon acceleration or otherwise) of the Guaranteed Obligations.

(Emphasis supplied.)  The term "Guaranteed Obligations" is defined to include "the principal and interest on the Bonds." The Guarantors further agreed that "whenever an Obligor does not pay any amount when due under or in connection with any Finance Document, it shall immediately on demand pay that amount as if it was the principal obligor."  (Emphasis supplied.)

On the same day, HTI executed an Amended and Restated Pledge and Security Agreement (the "2020 Pledge") with SMI Issuer, SMI 520, SMI USA, and two parties not named in this litigation (the "Pledgors").  As collateral for payment of the Bonds and performance of all covenants contained in the 2020 Agreements, including the Guarantee, the Pledgors granted HTI a lien on and security interest in several entities.

    C. The Forbearance Agreement

Finally, on the same day, HTI, SMI Issuer, SMI 520, and SMI USA, alongside two parties not named in this litigation, entered into a forbearance agreement (the "Forbearance Agreement").  SMI Issuer, SMI 520, and SMI USA agreed and acknowledged that the

failure to pay the principal and interest on the Bonds constituted an Event of Default under the 2017 Agreements. They also agreed and acknowledged that, as of June 22, 2020, the aggregate principal and interest of the Bonds was $271,474,466. HTI agreed that

> until the expiration or termination of the Forbearance Period, it will temporarily forbear from exercising its default-related rights and remedies against [SMI Issuer] or any other Obligor solely with respect to the Specified Defaults . . . .

The "Forbearance Period" was defined to mean "the period beginning on the Forbearance Effective Date and ending on the occurrence of any Event of Default under the Amended and Restated Bonds Purchase Agreement (the "Termination Event")." Upon the occurrence of a Termination Event, HTI's agreement to forbear from exercising its default-related rights and remedies was to "immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which [SMI Issuer] and the other Obligors waives." The Forbearance Agreement also stated that "[a]ny agreement by [HTI] to extend the Forbearance Period, if any, must be set forth in writing" and that SMI Issuer and the other Obligors acknowledge that HTI had not made any assurances concerning

> (i) any possibility of an extension of the Forbearance Period, (ii) the manner in which or whether the Specified Defaults may be resolved or (iii) any

additional forbearance, waiver, restructuring or any accommodations.

IV. HTI Repayment Notification Letter

Between December 16, 2020, and December 20, 2023, the parties did not discuss any extension of the Maturity Date under the 2020 Bonds Purchase Agreement. On December 20, 2023, HTI sent SMI Issuer a Repayment Amount Notification Letter dated December 19 (the "Letter"). The Letter stated that the Maturity Date under the 2020 Bond Purchase Agreement was December 15, 2023. It further stated that the Repayment Amount to be paid on that date was $344,100,503.77, consisting of the principal sum of $245 milion and interest that HTI then calculated as $99,100,503.77.[1] The Letter further stated that the failure to pay the Repayment Amount would constitute a Termination Event, and that upon such a failure, "the agreement of [HTI] under the Forbearance Agreement to forbear from exercising their respective default-related rights and remedies shall immediately terminate."

SMI Issuer did not respond to the Letter, nor did any other defendant. None of the defendants have paid HTI under any of the 2020 Agreements. HTI was the original purchaser of the

---

[1] The Complaint in this action calculated the interest on the Bonds as of December 15, 2023 as $99,100,503.77. In a letter dated March 29, 2024, HTI changed its calculation to $62,328,000 as of December 15, 2023, and $72,328,000 as of March 29, 2024.

9

Bonds and remains the owner of the Bonds. Fountain Alternative Investment SPC administers the Bonds for accounting purposes on behalf of HTI.

V.  Procedural History

HTI filed this action on January 11, 2024, against SMI Issuer, SMI USA, SMI 520, 520 Fifth Owner, and KG Fifth, asserting that there is diversity jurisdiction. It brought four breach of contract claims: one claim for breach of the 2020 Bond Purchase Agreement against defendants SMI Issuer, SMI USA, SMI 520, and 520 Fifth Owner; one claim for breach of the 2017 Bond Purchase Agreement against SMI Issuer; one claim for breach of the 2017 Guarantee against SMI USA, 520 Fifth Owner, and KG Fifth; and one claim for breach of the 2020 Pledge and the 2020 Guaranty against SMI Issuer, SMI USA, and SMI 520.

The defendants did not timely appear. On March 6, HTI moved for a default judgment against all defendants. At a hearing on March 22, defendants SMI USA and SMI 520 appeared. Default was entered against defendants SMI Issuer, 520 Fifth Owner, and KG Fifth on April 1. Today, for reasons stated in a separate Opinion and to preserve diversity jurisdiction, the claims against the three defaulting defendants were dismissed.

Defendants SMI USA and SMI 520 moved to dismiss the complaint and HTI filed a cross-motion for summary judgment on two of the Complaint's four claims. The motion to dismiss was

10

denied in an Order issued on August 28.  At a conference held on September 19, it was agreed that the dispute between HTI and defendants SMI USA and SMI 520 would be resolved through a trial on the submitted record.  The plaintiff was permitted to supplement its summary judgment motion with an affidavit supporting the admission of the agreements into evidence.  In support of its claims, HTI submitted the declaration of Nick Shi, a manager at the 100% equity owner of HTI.  SMI USA and SMI 520 submitted the declaration of David Lewittes, counsel for the defendants.

## Conclusions of Law

HTI seeks judgment against SMI USA and SMI 520 (the "Defendants") for breach of the 2020, the 2020 Pledge, and the 2020 Bond Purchase Agreement, as pleaded in Claims 1 and 4 of the Complaint.[2]  It is undisputed that neither SMI Issuer nor anyone else has paid HTI either the principal or interest owed under the 2020 Bond Purchase Agreement.  It is also undisputed that the Defendants guaranteed those payments and made pledges to secure that payment.

The Defendants principally assert that the Bonds have not matured because HTI failed to timely notify SMI Issuer of the Repayment Amount.  According to the Defendants, the 2020 Bond

---

[2] Claim 3 against SMI USA is dismissed as abandoned.

11

Purchase Agreement contains a condition precedent that required HTI to give SMI Issuer notice of the amount due before December 11, 2023, and its failure to do so automatically extended the repayment period by one year. The Defendants also argue that HTI lacks standing to sue since it is not the holder of the Bonds. These defenses fail.

All of the relevant agreements in this action include a New York choice-of-law provision. Under New York law, a plaintiff bringing a breach of contract claim must show that "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." Martinez v. Agway Energy Services, LLC, 88 F.4th 401, 409 (2d Cir. 2023) (citation omitted).

The law that governs the construction of a contract is well settled. Under New York law, an unambiguous contract is interpreted "according to the plain meaning of its terms." Revitalizing Auto Communities Environmental Response Trust v. National Grid USA, 92 F.4th 415, 441 (2d Cir. 2024) (citation omitted). "A contract is unambiguous if its language has a definite and precise meaning, providing no reasonable basis for a difference of opinion." Id. (citation omitted). "Whether contract terms are unambiguous presents a question of law that

is resolved by reference to the contract alone." Martinez, 88 F.4th at 409 (citation omitted). "If the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Steiner v. Lewmar, Inc., 816 F.3d 26, 32 (2d Cir. 2016) (citation omitted). Under New York law, "all writings which form part of a single transaction and are designed to effectuate the same purpose must be read together," even when the agreements "were executed on different dates and were not all between the same parties." TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir. 2005) (citation omitted).

To determine whether disputed contract language is ambiguous, a court must ask whether it is "ambiguous when read in the context of the entire agreement." 32BJ N. Pension Fund. V. Nutrition Mgmt. Servs. Co., 935 F.3d 93, 100 (2d Cir. 2019) (citation omitted). "[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (citation omitted). In interpreting contracts, "words should be given the meanings ordinarily ascribed to them and absurd results should

13

be avoided." Mastrovincenzo v. City of N.Y., 435 F.3d 78, 104 (2d Cir. 2006) (citation omitted).

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc., 821 F.3d 297, 305 (2d Cir. 2016) (citation omitted) (applying New York law). Under New York law, "express conditions must be literally performed; substantial performance will not suffice." In re Johns-Manville Corp., 759 F.3d 206, 214 (2d Cir. 2014) (citation omitted).

New York law "respects a presumption that terms of a contract are covenants rather than conditions" and requires that conditions precedent be "expressed in unmistakable language." Sohm v. Scholastic Inc., 959 F.3d 39, 46 (2d Cir. 2020) (citation omitted), abrogated in part on other grounds by Warner Chappel Music, Inc. v. Nealy, 601 U.S. 366 (2024). In determining whether an agreement makes an event a condition, "courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition." Bank of N.Y. Mellon, 821 F.3d at 305 (citation omitted). While "specific, talismanic words are not required," "linguistic conventions of condition -- such as 'if,' 'on condition that,'

14

'provided that,' 'in the event that,' and 'subject to'" can make it plain that the clause is a condition precedent. Id. (citation omitted). "It is for the court to decide, as a matter of law, whether a condition precedent exists under the terms of a contract." Sohm, 959 F.3d at 46 (citation omitted).

HTI has proved that the Maturity Date of the Bonds under the 2020 Bond Purchase Agreement was "thirty-six (36) months from the date of this Agreement," i.e., December 16, 2023. The 2020 Bond Purchase Agreement unambiguously states the Maturity Date.

While § 8.1 of that Agreement provided a mechanism for extending that due date, no such extension was granted. Section 8.1 states that the Maturity Date "may be extended for a period of twelve (12) months subject to annual review by the Required Holders." Section 15.1 prohibits any amendment of § 8 without the express written consent of HTI. No such writing was ever executed.

The Defendants argue that HTI was obligated to provide a notice of the Repayment Amount to SMI Issuer five business days prior to the Maturity Date, and that this requirement constitutes a condition precedent to the maturation of the Bonds and thus to SMI Issuer's obligation to pay. This argument fails.

15

The notice provision contained in § 8.1 is not a condition precedent. For ease of reference, it is repeated here. It required that "[t]he Repayment amount payable by the Company shall be as notified by the Purchaser to the Company five (5) Business Days prior to the Maturity Date." This clause is not labeled as a condition precedent to the maturation of the Bonds, nor is it couched in any linguistic conventions of condition. Moreover, § 11.4 of the 2020 Bond Purchase Agreement does not permit HTI's delay of nine days in sending notice of the amount owed to be read as a waiver of its rights to enforce payment. Section 11.4 states that "no delay on the part of [HTI], . . . in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice their rights, powers, or remedies."

The Defendants also argue that § 8.1 casts "annual review by the Required Holders" as a condition precedent to the maturation of the Bonds. Not so. The maturation of the Bonds is not "subject to" annual review by the Required Holders; rather, that annual review exists in the event of an extension of the Maturity Date, which did not occur.

Finally, the Defendants recently asserted that the plaintiff lacks standing to sue because the plaintiff is not the holder of the bonds. This argument fails. The plaintiff has

16

shown that HTI remains the owner of the Bonds, with standing to sue the defendants. Because the Bonds have matured and payment has come due without satisfaction by SMI Issuer, SMI USA and SMI 520 are jointly and severally liable for the payment.

## Conclusion

Manhattan SMI KG Properties Finance Limited breached the 2020 Bond Purchase Agreement; as a result, SMI USA Group LLC and SMI 520 Fifth Ave LLC are jointly and severally liable under the 2020 Guarantee and the 2020 Pledge and Security Agreement. Judgment shall be entered against SMI USA Group LLC and SMI 520 Fifth Ave LLC on Claims One and Four. Claim Three is dismissed. A scheduling order will permit HTI to present its calculation of damages.

Dated:   New York, New York
         October 9, 2024

                                          _____
                                          DENISE COTE
                                          United States District Judge